NEWELL v. THE MAHASKA COUNTY SAVINGS BANK ET AL.

1. **Referee: RE-SUBMISSION : PRACTICE.** A party will not be allowed to file an amended pleading tendering a new issue after a referee's report has been made, and thereupon have a re-submission to the referee, without at least offering a reasonable excuse for neglecting to file the amendment before the referee's report is made.

*Appeal from Mahaska District Court.*

TUESDAY, JUNE 3.

THIS is an action on account of materials furnished for a building, and to establish a mechanic's lien. Judgment was rendered in favor of plaintiff for $40.70. The plaintiff appeals. The facts are stated in the opinion.

*John F. Lacey,* for appellant.

*M. E. Cutts,* for appellee.

Day, J.—On the 15th day of December, 1876, the plaintiff filed his petition alleging that the defendant bank is a corporation, and that defendant Montgomery was a contractor, engaged in building a bank building for said savings bank; that plaintiff made a sub-contract with Montgomery, principal contractor, to furnish materials for said building, for which plaintiff claims a mechanic's lien.

1. REFEREE: re-submission: practice.

The cause was referred to L. H. Hole, Esq., who, on the 17th day of December, 1877, filed the following report:

"1. That the controversy is caused by a mistake caused by one Finkbine (who was architect and superintendent of the building of the Mahaska County Savings Bank), in reducing a bid of plaintiff to furnish stone for the building of said bank made for seventy-five cents a foot plain work, and one dollar a foot moulded work, to dollars and cents. The amount, according to said architect's calculation, was six hundred and seventy-three dollars and eighteen cents.

"2. That said calculation was made for accommodation of bidders, without either being authorized or forbidden by the said bank.

"3. The difference between the said calculation and the true calculation, predicated on said amounts per foot as per bid, is ninety-nine dollars and fifty-three cents.

"4. That said plaintiff, under the supposition that said Finkbine's figures were correct, left them with the bank to guide the chief contractor.

"5. That a few days after this, on June 2, 1876, defendant J. C. Montgomery made a contract with said bank for the construction of said building, including the cut stone, which the plaintiff was to furnish.

"6. That the said contract was predicated on the figures left with the bank by plaintiff, for which cut stone was to be furnished, to-wit: six hundred and seventy-three dollars and eighteen cents.

"7. Plaintiff recognized said defendant as chief contractor.

"8. That plaintiff served the bank with notice, with statement of account under oath, claiming a mechanic's lien on east ⅓ of lot 8, block 12, Oskaloosa, old plat, within thirty days after completing the work. Said lien was at the same time duly filed in the clerk's office of said county, as provided by law.

"9. Extra work was performed by plaintiff, as ordered

by the chief contractor, Montgomery, in the amount of six dollars and fifty cents.

"10. Plaintiff has received on account of said cut stone the sum of six hundred and thirty-eight dollars and ninety-eight cents from defendant Montgomery.

"As conclusions of law I find, as claimed in the pleadings, that plaintiff held a sub-contract with defendant Montgomery for the furnishing of stone for said building; that the consideration for furnishing said cut stone was six hundred and seventy-three dollars and eighteen cents; that there is due and unpaid on said sub-contract the sum of thirty-four dollars and twenty cents, and the further sum of six dollars and fifty cents for extra work—total, forty dollars and seventy cents. I recommend a judgment for plaintiff of forty dollars and seventy cents, and costs, and that a mechanic's lien be established on the real estate above described."

After the report was made out the plaintiff's attorney asked of the referee leave to file an amended petition, which was granted.

On the 18th day of December, 1877, the plaintiff filed an amendment to the petition alleging that after part of the work had been performed plaintiff discovered the mistake, and notified the bank and Montgomery thereof, and refused to proceed further in the same, and that defendant orally promised and agreed to rectify the mistake, whereupon plaintiff resumed and completed the work.

The plaintiff thereupon filed a motion to compel the referee to amend his report, and make it more complete and specific, in this:

"1. That he find the amount of the damages caused by the mistake referred to.

"2. That he report more fully the circumstances and cause of the mistake.

"3. That he report who is benefited and who damaged by said mistake, and how much.

"4. That he report by whom said Finkbine was employed to superintend said bank building.

"5. That he report fully the circunstances under which the mistake was made.

"6. To report what plaintiff did in relation to said mistake as soon as discovered, and set out the original bid of plaintiff in writing, as introduced in evidence."

The court overruled this motion, and on motion of the defendant confirmed the report, and entered judgment and decree in accordance with the referee's recommendation. The plaintiff thereupon filed a motion for a new trial, in which, so far as we are able to determine from the record, the objection was for the first time presented to the court that the referee had failed to pass upon the issue as to the new contract of the defendant to correct the mistake. The court overruled the motion for a new trial, and the plaintiff excepted.

We are unable to discover any error in the rulings of the court. The report of the referee passes upon all the issues involved at the time the report was filed. It appears that the cause was submitted to the referee on the 29th day of September. The plaintiff must have been then aware of the evidence bearing upon the promise of the defendant to rectify the mistake. The report of the referee was not filed until the 17th day of December, and not until the day following did the plaintiff file the amendment to his petition. A party ought not thus to be allowed to file an amended pleading and tender a new issue after a referee's report has been filed, and thereupon to have a re-submission to the referee, without at least offering some excuse for neglecting to file the amendment before the making of the referee's report. Besides, the motion to refer the cause to the referee for more specific findings does not ask that the referee report as to the alleged promise of defendant—the only thing material to the controversy alleged in the amended petition. It is not until after the report of the referee is confirmed, and judgment rendered

'thereon, that it is suggested that any report is desired as to the alleged new contract of the defendant.

Under the circumstances the court did not err in confirming the report, nor in refusing a new trial.

The judgment of the court is

AFFIRMED.

SEEVERS, J., being interested, took no part in the consideration of this case.