(23 App. Div. 590.)

### HUGHES v. SMITHER.

(Supreme Court, Appellate Division, First Department. December 31, 1897.)

1. ACCOUNT STATED—JOINT ADVENTURE.

An action upon an account, alleged to have been stated as between principal and agent, will not lie where the actual relation between the parties, in the transactions to only a portion of which the account relates, was that of persons engaged in a joint adventure, involving a sharing of profits and losses.

2. SAME—ASSIGNED CLAIM.

If in such a case the action is brought by one claiming under an assignment of the mere claim on the alleged account stated, he must be held strictly to his allegations, for in no way could the action afford the defendant an opportunity to seek a final settlement of his joint-adventure accounts with the assignor.

3. SAME—WHAT CONSTITUTES.

An account does not become "stated" because the party to whom it is rendered renders a responsive account, in which, while charging himself with the balance claimed, he enters on the other side of the account items more than sufficient to wipe out that balance. Such an "admission" must be taken as a whole or not at all.

4. PARTNERSHIP—RENDITION OF ACCOUNT.

The doctrine, as between debtor and creditor, of an implied promise to pay, resulting from the rendition of an account by one party which is received and retained by the other in silence, is not applicable to a partnership account.

Appeal from judgment on report of referee.

Action by William H. T. Hughes against John T. Smither. From a judgment entered on a decision of the referee dismissing his complaint on the merits, plaintiff appeals. Affirmed.

The action was upon an account alleged to have been stated between the plaintiff's assignors, Mellor & Fenton, of Liverpool, and the defendant, who was a merchant doing business in Texas. The transactions between the parties consisted in the purchase and sale of cotton, and what are known as "cotton futures," upon joint account. The defendant purchased the cotton in this country, and shipped it to Mellor & Fenton, who sold it in the Liverpool market. The result of the transactions was a loss, and the account alleged to have been stated showed that Mellor & Fenton had honored and paid the defendant's drafts, drawn upon them for the purchase price of the cotton, to an amount in excess of that received upon the sale of the cotton in the Liverpool market. For this balance the plaintiff, as assignee of Mellor & Fenton's demand, brings this action. Further facts are stated in the opinion.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and PATTERSON, JJ.

George C. Lay, for appellant.
Fisher A. Baker, for respondent.

BARRETT, J. The complaint proceeds upon the theory that the relations between the plaintiff's assignors and the defendant were those of principal and agent. It is averred that, for their services as the defendant's commission merchants and factors, they were to be "compensated by a commission estimated at" one-half of the net profits to be derived from the contemplated sales of cotton. At the close of the trial, this allegation being entirely unproved, the plaintiff was permitted to amend, so far as to withdraw the words which we have quoted, and to substitute therefor the simple averment that his assignors were to "receive" one-half of such net profits. This amendment, however, did not change the characterization of the action which runs through the complaint. The allegation still remained that the cotton was consigned to the assignors, and that their doings with respect thereto were "at the special instance and request of the defendant as his agents." Thus, it is clear that the accounts alleged to have been stated were accounts as between principal and agent, and were not the general accounts of a partnership or joint adventure. Now, it appears beyond question, from the documentary evidence introduced by the plaintiff himself, that the arrangement between the original parties was not that of principal and agent; that, as matter of fact, the plaintiff's assignors were not commission merchants as to the transactions in question, and did not act therein as the defendant's factors. Whether there was an ordinary partnership, in the strict sense of that relation, need not, therefore, be specially considered. The learned referee has found that there was such a partnership, and we are inclined to agree with him. There certainly was, however, a joint adventure, with many of the attributes of a partnership, such as an equal sharing of profits and losses, and the mutual exercise of discretion as to purchases and sales, subject to certain agreed principles. Indeed, the plaintiff hardly disputes this view of the relations of the parties. What he says is that the original parties

"were not partners, in the strict sense that implied the necessity of an equity suit." This is plainly begging the question. Again, he says:

"There was no partnership between the original parties in the strict sense. At most, the parties were jointly interested in the profits, but not in the cotton or its proceeds."

In this latter position, however, he is in error. The defendant, it is true, purchased the cotton in his own name, but he did so for the joint account. So the assignors sold the cotton in their own names, but in doing so they, too, acted for the joint account. Notwithstanding the phraseology of the formal invoices used in the dealings between the parties, it is quite clear that, however the legal title may have stood at any one time, both parties were equitably interested in the cotton as well as in its proceeds. Be that as it may, however, it cannot be gainsaid that the relations of the parties were not those of vendor and vendee, principal and agent, or consignor and consignee. It follows that the plaintiff failed in the entire scope of his action.

It will be observed that the plaintiff is but an assignee of the particular claim set forth in the complaint. The averment is of an account stated as between principal and agent, and of an assignment of the "said claim." There is no allegation of any other claim, or of an assignment of any other claim. The plaintiff must be held strictly to what he has thus alleged. If his assignors had brought this action, they might have been treated with greater liberality. Had their proofs deviated from their allegations, an amendment setting up an account stated of the joint-adventure transactions would not have prejudiced the defendant. Under such circumstances, upon an amendment being permitted, the defendant could show errors sufficient to warrant the reopening of the account, and a final settlement of the joint-adventure accounts could ultimately be decreed. Not so, however, as to the assignee of the claim alleged. He must recover, if at all, strictly upon the issue which he has tendered, namely, the issue of an account stated between principal and factor. It was, doubtless, this consideration which influenced the learned referee at the close of the case to deny the plaintiff's motion to conform the pleadings to the proofs, "so as," to quote the plaintiff's language, "to avail himself of the evidence in the case as showing an account stated upon both causes of action, upon any legal theory of the relation between the parties to the original contract which may be supported by the facts." That motion indicated the stress in which the plaintiff then found himself between his averments and his proofs. We think his motion was properly denied.

These views are amply sufficient to justify the conclusion at which the learned referee arrived, dismissing the complaint upon the merits. It appears, however, that the learned referee fully considered the question whether an account of the partnership or joint-adventure transactions was stated, and his decision upon that question of fact was also adverse to the plaintiff. He distinctly found that such an account had not been stated. To quote the language of his decision:

"That the account of the partnership business so transacted by Mellor & Fenton and the defendant had not, at the commencement of this action, been adjusted, settled, or agreed to for either of said two periods or seasons of business."

Upon a careful review of the evidence, even in the light of the very elaborate brief submitted by the plaintiff's counsel, we are of the opinion that this finding of the learned referee was amply supported by the evidence. The gist of the plaintiff's argument is that the defendant should be deemed to have agreed to the accounts because he had no just reason for disagreement, and gave none; in other words, because, as an honest man, he ought to have agreed to them. It is suggested, too, as to one of the causes of action, that the defendant admitted the balance claimed by the plaintiff's assignors in their original account, because, in his responsive account, he credits them with the balance claimed by them. It appears, however, that upon the other side of his account he charged them with items more than sufficient to wipe out their alleged balance. What is thus called an "admission" cannot be severed from the context, and treated independently. The plaintiff must take the defendant's entire account as it stands. Thus the opposing accounts stated nothing and settled nothing finally with regard to the assignors' claims. The defendant's account was the opposite view of the assignors' account which he thus put forward. Whether that view was right or wrong, whether his charges against the assignors were treated as a counterclaim or as a set-off, the accounts were certainly left unsettled, and the respective claims of the parties remained open and unliquidated.

The underlying fallacy of the appellant's entire argument is in the application to a partnership account of the rules regarding an account stated as between debtor and creditor. The rule principally relied upon is that the debtor's assent may be proved by silence and acquiescence, and that from the latter circumstances an implied promise to pay an asserted balance may be inferred. We need not consider the question whether an express promise to pay an agreed balance is always necessary to maintain an action at law as between partners, although certainly there are many judicial opinions to that effect running through the cases in this state. But, even if an implied promise to pay an agreed balance may be sufficient to maintain such an action at law, the implication must at least result from an actual settlement of the partnership accounts, and the striking of an agreed balance. The doctrine, as between debtor and creditor, of an implied promise resulting from the preparation and rendition of an account by one party which is received and retained by the other in silence, cannot reasonably be applied to a partnership account. In the one case the account is rendered for the specific purpose of informing the debtor of the creditor's demand, and of obtaining payment. It is expected that such an account will, with reasonable promptitude, be scanned, and either paid, if found to be accurate, or disputed, if found to be inaccurate. If it be retained for a consid-

erable period without objection, the inference may properly be drawn that the debtor has no objection to offer, and that he intends to pay the balance. An entirely different attitude is assumed with regard to a partnership account. That is simply one partner's summary of the partnership dealings, and his version of the partnership status. The receipt of such an account suggests no immediate demand. The implication is that it is offered merely as a basis for subsequent liquidation. It has no element of finality. It leaves the person who receives it entirely free to seek further information before questioning his partner's figures. Both parties naturally understand that the account as rendered is tentative, and is but the first step in the direction of an accounting. Before there is a final settlement, they must go over their partnership affairs, arrive at a mutual understanding with regard thereto, and reach an agreement as to the proper balance to be struck. When that is done, it may be that the law will imply a promise to pay the agreed balance, although that, under the authorities, is at least doubtful. Here there was no express promise, and no such settlement of the accounts or balance struck as could possibly raise an implied promise. It follows, in any view which can be taken of this case, that the learned referee's decision was correct. The plaintiff's difficulty throughout was the attempt to avoid a proper accounting in equity between the original parties by the short cut of an assignee's action at law upon an account stated. In this he has signally failed.

The judgment appealed from should, consequently, be affirmed, with costs. All concur.